IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Criminal Case 08-cr-00113-WDM-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    MANUEL SANTISTEVEN,

    Defendant.

---

**ORDER ON MOTIONS TO QUASH**

---

Miller, J.

This matter is before me on the Motions to Quash Subpoena (ECF Nos. 133 & 135) filed by interested parties City and County of Denver ("Denver") and Detective Paul Baca. A hearing on the matter was held on July 26, 2011, where further argument, but no evidence, was presented. For the reasons set forth below, I will grant the motions and quash the subpoena.

Background

Santistevan is charged in an eight-count superseding indictment alleging: (1), (3), (5) Interference with Commerce by Robbery and aiding and abetting, in violation of 18 U.S.C. § 1951(a) and (b) and 18 U.S.C. § 2; (2), (4), (6) Use and Carry of a Dangerous Weapon During the Commission of a Violent Crime, and aiding and abetting, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2; (7) Possession of a Firearm by a Felon in violation of 18 U.S.C. § 922(g)(1); and (8) Possession of a Short-Barreled

Shotgun in violation of 26 U.S.C. § 5861(d).  The case is related to two other now closed cases, *United States v. Ishmael Mosely*, 07-cr-00435-REB and *United States v. Roman Santistevan*, 07-cr-00435-REB –2.  The cases against Mr. Mosely and Roman Santistevan (Defendant's brother) have concluded and these defendants have been sentenced.

Before Defendant's arrest, a search warrant was issued for a search of Defendant's home at 250 S. Zenobia Street, Denver, Colorado on August 22, 2007.  Exh. 1 to Gov't Resp., ECF No. 130-1.  The affiant is Detective Paul Baca, who summarizes information conveyed to him by other detectives and incident reports of several of the robberies.  The warrant application relies significantly upon alleged statements from Mr. Mosely, as relayed to the other detectives.  In a Motion to Suppress Fruits of Search Warrant (ECF No. 119), Defendant challenges the warrant on the grounds that the affidavit does not demonstrate sufficient probable cause for the issuance of the warrant.  He argues that the information was stale because it relied on statements from Mr. Mosely, who, according to his statements, had not been at Defendant's residence for several days before his arrest.  Defendant also argues that the scope of the search exceeded the matters set forth in the warrant.  He does not, however, challenge the accuracy or the veracity of the underlying facts as summarized by Detective Baca.

On or about March 1, 2011, after Defendant's pretrial motions were filed, Defendant served on the Denver Police Department ("DPD") a subpoena to testify and to produce documents at the Clerk's Office on March 8, 2011.  The document request is for "All writings, complaints or other documents pertaining to disciplinary reports and

2

proceedings, and the content of all Internal Affairs files, concerning Denver Police Detective Paul Baca." Exh. A to DPD's Motion to Quash. Both Denver, the actual governmental entity of which the DPD is a department, and Detective Baca individually have moved to quash the subpoena.

It appears that what triggered Defendant's subpoena was the disclosure of a decision in a state court proceeding involving Detective Baca, *People v. Puller*, 09CR10467 in the Denver District Court ("*Puller*"). Detective Baca provided the affidavit for the arrest warrant that resulted in the arrest of the defendant in *Puller*. In an order dated June 24, 2010, the judge dismissed the charges against the defendant after a hearing and finding that Detective Baca had lied in his affidavit. In the affidavit, Detective Baca swore that two witnesses in videotaped interviews had implicated the defendant in an assault. However, a review of those interviews showed that the witnesses did not implicate the defendant at all. Rather, one expressly disclaimed any involvement by the defendant, and the other claimed not to know the defendant and offered no evidence to show that the defendant committed the crime. The judge in *Puller* concluded that this was not a mere misunderstanding or negligent error but rather reckless or intentional falsehood. Without these statements, there was no probable cause for the arrest of the defendant and so the charges were dismissed.

## Discussion

Fed. R. Crim P. Rule 17 permits the issuance of subpoenas to witnesses to produce documents and other data before trial. The parties appear to agree that the relevant standard Defendant must meet to require production is outlined in *United States v. Nixon*, 418 U.S. 683 (1974). In determining whether a criminal defendant has

a right to materials through a subpoena on third party, the court must consider the following factors: (1) whether the materials are evidentiary and relevant; (2) whether the materials are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (3) whether the requesting party cannot properly prepare for trial without such production and the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) whether the requesting party's application is made in good faith and is not intended as a general fishing expedition. *Nixon* at 699-700. The burden of establishing these elements is on the party seeking enforcement of the subpoena under Rule 17. *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002).

Baca and Denver argue that Defendant has not made a threshold showing with respect to the *Nixon* factors. They also argue that the subpoena implicates Baca's legitimate privacy rights and official information privilege, which must be balanced against the Defendant's alleged need for the material, evaluating factors such as relevance and other compelling interests. *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 435-7 (10th Cir. 1981); *Martinelli v. District Court,* 612 P.2d 1083, 1088 (Colo. 1980). They argue that Defendant has not shown that the documents sought would be relevant and that production of the responsive documents would be voluminous and exceedingly burdensome. Denver also argues that one of the matters in the Internal Affairs files deals with a case that was ordered sealed by a Colorado State District Court. Another case is an open matter and Denver contends that disclosure would potentially compromise the internal investigation and the rights of those involved. In the alternative, the Denver and Baca request that the materials be reviewed *in camera* for a determination of relevance, and that a protective order issue

protecting confidential information of any documents disclosed.

In response, Defendant explains that he seeks these documents because the *Puller* case indicates that Detective Baca may have been untruthful in other affidavits supporting an arrest or search warrant and that such evidence is relevant to Detective Baca's credibility.

I agree that the *Nixon* factors have not been satisfied in this case and that the subpoena should be quashed.  First, I agree with Denver and Detective Baca that Defendant has not established that the documents sought are relevant to these proceedings.  Defendant has only challenged whether the warrant application is supported by probable cause.  In reviewing such a challenge, the question is "whether, under the totality of the circumstances presented in the affidavit, the magistrate judge had a 'substantial basis' for determining that probable cause existed." *United States v. Tuter*, 240 F.3d 1292, 1295 (10th Cir. 2001) (internal quotation marks and citation omitted). "The test is whether the facts presented in the affidavit would warrant a [person] of reasonable caution to believe that evidence of a crime will be found at the place to be searched."  *United States v. Artez*, 389 F.3d 1106, 1113 (10th Cir. 2004) (quotation, citation, and emphasis omitted).  In general, if no testimony is presented to the reviewing magistrate, review of the existence of probable cause to support a warrant focuses exclusively on the supporting affidavit's four corners. *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971).  Detective Baca's credibility would have no bearing on this inquiry.

Moreover, even if Defendant challenged the warrant on the grounds that the information contained in the affidavit was incorrect or misleading, he has not even made

a threshold showing that such inaccuracies exist.  Defendant does not dispute that Detective Baca acted essentially as a scrivener, summarizing information from other sources, and not as the primary source of the underlying facts as occurred in *Puller*. Defendant has not shown that Detective Baca inaccurately rendered the information he received from the other detectives or reports such that his credibility would be put at issue.  The government states that it has no intention of using Detective Baca as a witness and so, again, even if additional instances similar to the *Puller* situation were found, there would be no testimony to impeach.

Because Defendant fails to establish this critical element, I need not examine the remaining *Nixon* factors.

Accordingly, it is ordered:

1. The Motions to Quash Subpoena (ECF Nos. 133 & 135) are granted. Defendant's subpoena, served on the Denver Police Department, is quashed.

DATED at Denver, Colorado, on July 27, 2011.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge